**UNITED STATES DISTRICT COURT**         **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:03-CR-17 |
| | § | |
| JOEL DEAN BISHOP | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Joel Dean Bishop's ("Bishop") second *pro se* Request for Appointment of Counsel/Motion for Compassionate Release (##80, 81), wherein he requests the appointment of counsel and that he be released from prison due to his medical condition, his age, and the continued threat of COVID-19.  The court previously denied Bishop's prior motions to appoint counsel and for compassionate release, which the Government opposed, by Memorandum and Order dated March 19, 2021 (#79).  On February 9, 2023, the Government submitted updated medical records for Bishop, as ordered by the court (#83).  After conducting an investigation in February 2023, United States Probation and Pretrial Services ("Probation") recommends denying the motions.  Having considered the motions, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.    Background

On February 5, 2003, a federal grand jury in the Eastern District of Texas returned a two-count Indictment charging Bishop in Count 1 with Possession of a Firearm Not Registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d), and in Count 2 with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  After a four-day jury trial, the jury returned a verdict of guilty as to Count 2 of the Indictment.  On October 6, 2003, the court sentenced Bishop to 300 months' imprisonment, followed by a 5-year

term of supervised release.  The court ordered Bishop's sentence to run concurrently with the term

of imprisonment imposed in Docket No. 16654, 411th District Court, Polk County, Texas;

however, the court ordered his sentence to run consecutively to his terms of imprisonment in

Docket No. 930897, 262nd District Court, Harris County, Texas, and Docket Nos. 476884,

481937, 475110, 475109, 475724, 481940, 476384, 481938, 481939, and 481936, 339th District

Court, Harris County, Texas.  The United States Court of Appeals for the Fifth Circuit affirmed

his conviction and sentence on direct appeal.  *Bishop v. United States*, 111 F. App'x 343 (5th Cir.

2004).  Bishop subsequently filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255 in

2006, which was denied.  *Bishop v. United States*, No. 1:06cv58 (E.D. Tex. May 24, 2006). He

filed a second motion to vacate sentence pursuant to 28 U.S.C. § 2255 in 2016, which was

likewise denied.  *Bishop v. United States*, No. 1:16cv58 (E.D. Tex. Mar. 22, 2018).  Bishop's

federal sentence commenced on October 5, 2020.  He is currently housed at Federal Correctional

Institution Butner Medium II, located in Butner, North Carolina ("FCI Butner Medium II").  His

projected release date is January 23, 2042.

II.    Appointment of Counsel

      In his motion, Bishop requests the appointment of counsel to assist him in filing another

motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to

appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555

(1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see*

*Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467,

494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that

"every federal court of appeals to address the issue has agreed that there is no constitutional (or

statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles.  When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.'

The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Bishop is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Bishop provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Bishop has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Bishop is 68 years old, but there is no indication that he is terminally ill, unable to care for himself, or otherwise a candidate for compassionate release. Moreover, according to his Presentence Investigation Report ("PSR"), he has earned a GED, an Associate degree in Business Administration, and 30 hours toward a Bachelor of Science degree while incarcerated. In addition, he previously filed a motion for compassionate release *pro se*. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing

appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Bishop's motion for appointment of counsel provides no basis for relief.

III.  Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

*See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this

5

as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

    A.    <u>Exhaustion of Administrative Remedies</u>

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *Jackson*, 27 F.4th at 1089; *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a

mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Bishop appears to have exhausted his administrative remedies.  Probation reports that on August 6, 2022, Bishop submitted a request for compassionate release to the warden of the facility where he is housed.  Although a copy of the request is not included in the court filings, a BOP medical record dated August 9, 2022, confirms that a social worker at the facility received a request for reduction in sentence from Bishop for consideration under "the debilitated with medical conditions, elderly with medical conditions and COVID" categories and that a physician

was notified for medical clearance.  Probation states that the request was subsequently denied due to Bishop's not meeting the requirements for debilitated medical condition or the requirements for time served for elderly inmates with medical conditions.  Although Bishop complied with the exhaustion requirement before filing his motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement.

   B.   Criteria for Release

   The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria.  *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022) ("[A] prisoner seeking compassionate release must overcome three hurdles." (quoting *Jackson*, 27 F.4th at 1089)); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Shkambi*, 993 F.3d at 391; *see Rollins*, 53 F.4th at 358.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[2]  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at

_____

   [2] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States

358; *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021);

*United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that

may merit compassionate release.  Rather, Congress elected to delegate its authority to the

Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the criteria to

be applied and a list of specific examples"); *Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287;

*Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a

policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes the

reasons that qualify as extraordinary and compelling.[3]  However, § 1B1.13 references only

motions filed by "the Director of the [BOP]"—not an individual defendant.[4]  Consequently, the

Fifth Circuit has held that when a defendant files a motion for compassionate release on his own

behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that

---

Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

[3] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[4] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  On August 4, 2022, the United States Senate confirmed seven new members to the Commission.  Although the Commission now has a quorum for the first time in over three years, it has not promulgated any additional policy statements or amendments to the guidelines.

policy statement governs only motions filed by the Director of the BOP.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  *See Escajeda*, 58 F.4th at 186.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing."  *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Escajeda*, 58 F.4th at 186; *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'"  *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No.

15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)); *see Escajeda*, 58 F.4th at 186. "These terms explain why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Escajeda*, 58 F.4th at 186 (citing *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)).

### 1.     Medical Condition

In the instant motion, Bishop contends that he is eligible for compassionate release due to his medical condition, which he avers has "changed completely," since his prior filing. Yet, he continues to complain that he suffers from a "brittle diabetic condition," which he contends has left him severely impaired due to his "highly fluctuating blood sugar levels" that have remained unstable. He also asserts that the facial bones on both sides of his nose were crushed from blows he received from another inmate. In addition, he maintains that his knees have worn out to the point that he uses a walker to move about the facility. Finally, Bishop asserts that although he recovered from COVID-19, he was left with many serious side effects manifested by various mental problems. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with his PSR, prepared on July 23, 2003, and revised on September 4, 2003, Bishop reported that he was diagnosed with hepatitis C at age 16 and with diabetes in January 2001 at approximately age 46. At the time, he was taking metformin and glyburide to treat his diabetes, but he was not taking any medication for hepatitis C. Bishop also asserted that he had a "bad back" resulting from a 45-foot fall from scaffolding that occurred in 2001. In addition, he noted that he had hurt his knees several years previously while playing volleyball and that, as a result, he "has no ligaments in his knees." Bishop noted that he was taking percogesic and motrin 800 for his back and knees, contending that he could not walk on uneven surfaces or lift heavy objects.

According to his 2023 BOP medical records, Bishop has been diagnosed with Type 1 diabetes mellitus with diabetic neuropathy, hyperlipidemia (high cholesterol), essential (primary) hypertension (high blood pressure), chronic obstructive pulmonary disease ("COPD"), gastro-esophageal reflux disease ("GERD"), keratoconus (an eye condition), Bell's palsy, osteoarthritis of the knee, trigger finger, and a history of COVID-19. His COPD is listed as resolved as of July 1, 2021, and there is no discussion about the condition or any medications prescribed for it in his current medical records. A review of Bishop's medical records also reveals no reference to facial injuries sustained as a result of a fight with another inmate or any treatment for such a condition. Bishop is prescribed insulin and glucose tablets to treat his diabetes; aspirin to control his hyperlipidemia and hypertension; atorvastatin to manage his hyperlipidemia; amlodipine and losartan potassium to treat his hypertension; Capzasin to treat his osteoarthritis; gabapentin to

12

control his pain; famotidine to relieve his GERD; and polyvinyl/povidone and an opthalmic ointment to relieve his keratoconus and other eye problems. A medical record dated June 13, 2022, states that his previously diagnosed hepatis C was treated with Mavyret from August to October 2021 and an "HCV viral load" was not detected in January 2022. On August 2, 2022, Bishop was prescribed a course of prednisone tablets to treat his Bell's palsy (a short-term condition in which there is a sudden weakness or paralysis of muscles on one half of the face). In January 2023, Bishop received therapeutic injections for osteoarthritis of his left knee and for his trigger finger condition (inflammation of the tendon sheath that causes the affected finger to lock in a bent position).

The court's prior opinion discussed Bishop's medical afflictions in depth and will not be repeated as to his medical status at that time. His hypertension and hyperlipidemia remain well controlled, as reflected by a medical record dated January 26, 2023, in which he reported good adherence and no reported problems with therapy as to both his high blood pressure and high cholesterol. Although Bishop's complaint of pain in his knees and his use of a walker are new, he mentioned that he had knee problems stemming from a prior sports injury, including the improbable assertion that he has no ligaments in his knees, when his PSR was prepared in 2003. His orthopedic problems and related pain appear to be well managed with medication, injections, splints, compression garments, braces, and medical shoes. A medical record dated January 26, 2023, indicates that Bishop was in no apparent distress. It was also noted that he used a walker and that he was "able to move self into clinic with no observed problems." His Bell's palsy, which had affected the left side of his face and caused eye dryness, had improved markedly by December 6, 2022, when he advised a medical provider that he was doing well, reporting that this

condition only occasionally caused an inability to close his mouth on one side.  Bishop's medical records reflect that he was diagnosed with COVID-19 on November 26, 2020, and that he had recovered by February 12, 2021, after a period of hospitalization.  Bishop has been repeatedly tested for the virus since that time as a result of his transfer between prison facilities from Beaumont, Texas, via Oklahoma City, Oklahoma, to Butner, North Carolina, and his leaving the facility for medical treatment, but all such tests have been negative for COVID-19.  Contrary to his assertions, there is no suggestion in his medical records that he suffers from "long COVID."

While Bishop's diabetes appears to remain problematic with fluctuating blood sugar levels, recent BOP medical records reflect that his condition has stabilized.  His insulin dosage has been changed to injections of 15 units of regular insulin in the morning and 10 units of regular insulin at noon and in the evening.  On February 6, 2023, he was also prescribed injections of insulin detemir.  In addition, Bishop takes glucose tablets to regulate his blood sugar.  Due to his recurrent hypoglycemia, his blood sugar levels are tested and monitored regularly, and he was recently issued a new monitor, a Freestyle Libre 2.  A medical record dated January 13, 2023, indicates that Bishop "was excited for the use of this system" and that he "reported no concerns" regarding his diabetes, had no problems with his current regimen, and declined the need for a medication adjustment.  His diet is regularly reviewed in light of his diabetic condition, and he is counseled regarding recommended changes to his food intake.  He is also counseled regarding the need for exercise, which primarily involves his walking around the housing unit, with a goal of at least 150 minutes of exercise per week.  A medical record dated December 1, 2022, indicates that Bishop's goal A1c level, which refers to his blood sugar level, is 8% due to his age, health

condition, and risks of hypoglycemia.  On January 31, 2023, his A1c level was 8.7%, which according to Bishop was "good for him."

Previously, on June 13, 2022, Bishop was transferred to Duke Regional Hospital when he manifested symptoms of an altered mental status as a result of diabetic ketoacidosis, a complication of diabetes when the body produces excess blood acids (ketones) which occurs in the absence of sufficient insulin.  By June 14, 2022, he reported feeling better and commented that he did not like that he was "out of it."  By June 17, 2022, he was back at FCI Butner Medium II in a much improved condition.  Bishop, however, has not always been compliant with his medication regimen, and some of his difficulties with maintaining his insulin and blood glucose levels may be self-induced.  His BOP medical records reflect a number of instances when he was a "no show" for the pill line, when he used profanity and cursed at the staff regarding his diabetes medication (5/12/22), when he discarded insulin in the toilet (June 28, 2022) and on the floor (July 1, 2022), and when he removed insulin from syringes (June 29, 2022).  In connection with these incidents, his prescription for glucose tablets was discontinued for several months, and the tablets in his possession were taken from him, due to concerns by the medical staff that he was intentionally taking the tablets to increase his blood glucose.  Moreover, while Bishop complains of a decrease in his mental acuity since filing his prior motion for compassionate release, the medical records reflect that his problems appear to stem primarily from his vacillating blood sugar levels.

Bishop is classified as a Medical Care Level 3 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 3 inmates "are outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications.

They may require assistance with some activities of daily living that can be accomplished by inmate companions.  Stabilization of medical or mental health conditions may require periodic hospitalization." Nevertheless, Bishop's current medical condition does not meet the criteria for compassionate release listed above.  None of Bishop's medical problems are terminal, untreatable, or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433.  Bishop is housed in general population, is ambulatory, has no work restrictions, and is cleared for food service.  Although he uses a walker to assist him in navigating the facility, there is no indication that he is restricted in performing the activities of daily living or that he is unable to care for himself in the prison setting.  Probation advises that Bishop is "receiving medication administration, vision screens, testing and treatment, lab work, and patient education," concluding that "[h]is medical situation appears to be easily managed by BOP's medical care."  Clearly, Bishop's long-standing diabetes, hepatitis C, and knee condition did not hamper or prevent him from committing his offense of conviction (in which he fled on foot, leaped over a bridge railing, and jumped into a lake) or from committing a series of crimes throughout his adulthood. *See Rollins*, 53 F.4th at 360 (noting that the defendant "had committed serious crimes while suffering from severe and life-threatening medical complications").  Thus, as before, Bishop has failed to establish that his medical condition constitutes an extraordinary and compelling reason to reduce his sentence or release him from confinement.

2.      Age

Bishop asserts that he is eligible for compassionate release due to his age and the effects

of "the natural aging process for incarcerated men."  While not binding on the court, the U.S.S.G.

provide that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious
> deterioration in physical or mental health because of the aging process; and (iii) has
> served at least 10 years or 75 percent of his or her term of imprisonment,
> whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).

Here, according to Bishop's PSR, he is 68 years of age.  Although he is at least 65 years

old, there is no indication that he is experiencing a serious deterioration in his physical or mental

health because of the aging process, as discussed above.  Moreover, he has served only 28 months

(9.3 percent) of his 300-month sentence, rather than the minimum of 10 years or 75 percent of his

sentence.  Hence, Bishop's age provides no avenue for compassionate release or a reduction in his

sentence.

3.      COVID-19

Bishop once again expresses concerns regarding the threat of COVID-19 within the prison

population.  Nevertheless, as of March 23, 2023, the figures available at www.bop.gov list 0

inmates (out of a total inmate population of 1,477) and 0 staff members at FCI Butner Medium II

as having confirmed positive cases of COVID-19 and 315 inmates and 104 staff members who

have recovered.  Moreover, according to Bishop's medical records, he tested positive for the

disease on November 26, 2020, and had recovered from the virus by February 12, 2021.  Bishop

has tested negative for COVID-19 multiple times since he recovered.  Thus, it appears that the

facility where Bishop is housed is handling the outbreak appropriately and providing adequate

medical care.  In fact, the court notes that the Butner Correctional Complex also includes a Federal Medical Center should Bishop require heightened medical care.  In any event, "the current phase of the pandemic is one in which the virus is circulating so widely that [Bishop] cannot reasonably expect to avoid coming into contact with COVID-19 outside of custody." *United States v. Fierro*, No. 2:09-cr-00240-KJD-PAL, 2022 WL 489829, at *3 (D. Nev. Feb. 17, 2022) (quoting *United States v. Rossi*, No. 2:16-cr-00262-JAD-PAL-2, 2022 WL 395001, at *3 (D. Nev. Feb. 9, 2022)).

Although Bishop expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Bishop, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *Thompson*, 984 F.3d at 435)); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F.

18

Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to all inmates and staff who wish to be inoculated. To date, the BOP has administered approximately 349,098 doses of the vaccine. According to www.bop.gov, FCC Butner, where Bishop is housed, has fully inoculated 4,083 inmates and 979 staff members. Indeed, Bishop has already received three doses of the COVID-19 vaccine—February 26, 2021 (Pfizer-BioNtech vaccine); March 16, 2021 (Pfizer-BioNtech vaccine); and November 29, 2021 (Moderna vaccine). In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Gibson*, No. 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021) ("Courts have held that, once vaccinated, the efficacy of the COVID-19 vaccines preclude[s] the argument that a prisoner's susceptibility to the disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)."); *United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant

was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No. 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing

complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021). Thus, given the BOP's vaccination efforts, the fact that he has previously recovered from COVID-19, and his receipt of three doses of the vaccine, Bishop has failed to establish extraordinary and compelling reasons to release him from prison.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Bishop's offense of conviction entails his possession of a firearm by a convicted felon. On April 23, 2002, police officers in Onalaska, Texas, conducted a traffic stop of the vehicle Bishop was driving. Bishop gave a false name to the officer. Upon learning that Bishop's passenger had an outstanding warrant, officers arrested the passenger. When conducting a search of the vehicle, officers found a tin box filled with an assortment of prescription pills and syringes as well as a 20-gauge, sawed-off shotgun. Upon discovery of the shotgun, Bishop, who was holding a small dog that had been in the passenger compartment of the vehicle, dropped the dog[5], leaped over the railing of a bridge, ran to a nearby lake, and jumped into the lake. One of the officers jumped into the lake and apprehended Bishop after a brief

---

[5] The dog ventured onto the roadway, was hit by a passing vehicle, and died.

struggle.  The officers later identified Bishop and discovered that he had two outstanding warrants from Harris County, Texas, for a parole violation and an aggravated robbery charge.

Bishop has an extensive criminal history, dating from age 17, which includes prior convictions for robbery by assault (3x), escape, theft (4x), aggravated robbery (11x), unlawful possession of a firearm by a felon, failure to identify, and evading arrest.  All of Bishop's aggravated robbery convictions involve the use of either a knife or a firearm.  His most recent aggravated robbery conviction entailed his pointing a black handgun at the cashier at a dry cleaners, demanding the cashier empty the cash register, and then locking her in a restroom while Bishop fled.  Bishop failed to comply with at least 14 previous terms of parole and had his release on parole revoked repeatedly.  Further, Bishop was on parole at the time of his offense of conviction.  In *Boyd*, the defendant had a similar history of violating probation rather than parole, including committing the offense of conviction while on probation.  *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *3 (E.D. Tenn. Nov. 2, 2021).  The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted."  *Id*.  This court shares the same concerns in reference to Bishop with regard to his inability to abide by prior terms of parole.  In addition, Bishop amassed 39 criminal history points in his PSR, three times the 13 points needed to reach the highest criminal history category.  Like the prisoner in *United States v. Jones*, Bishop is "the quintessential career offender."  852 F. App'x 60, 61 (3d Cir. 2021).  As the court observed in *Jones*, "even without the career-offender enhancement, Bishop would have a Category VI criminal history—the highest category—because of his long history of criminal behavior since age [17],

with most gaps in that behavior occurring only during times of incarceration." *Id*. at 61-62.  In short, Bishop's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

Moreover, Bishop has a long history of poly-substance abuse beginning at age 11, starting with heroin, which he continued to use on a daily basis multiple times per day up to the date of his arrest for his offense of conviction.  He also regularly used cocaine, methamphetamine, codeine, barbiturates, Vicodin, Xanax, Soma, and Oxycontin.  Therefore, releasing Bishop may facilitate his continued drug abuse, as he would gain unfettered access to over-the-counter medications and a variety of illegal drugs outside the BOP.

Furthermore, BOP records show that Bishop is assessed by the BOP as posing a medium risk for recidivism.  Probation notes that he had multiple prior revocations of community supervision due to new criminal conduct.  In addition, as Probation points out, Bishop has failed to accept responsibility for his offense of conviction.  He claims in his motion, "I was wrongly convicted in the Federal Court of the weapons charge," despite the fact that he was found guilty at trial as affirmed on appeal and on habeas corpus review, and adamantly denies having any knowledge of the shotgun that was located in the back seat of the vehicle he was driving.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and

the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In view of the nature and circumstances of his offense of conviction, his extensive criminal history, his repeated failure to comply with prior terms of release, and his history of poly-substance abuse, the court cannot conclude that Bishop's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Bishop compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime

24

and seriousness of the offense." *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F.4th at 1100.  In the instant case, releasing Bishop after he has served only 28 months (or approximately 9.3%) of his 300-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall far short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Bishop's track record is abysmal.  There is no reason to believe that Bishop would not revert to engaging in multiple acts of violence involving the use of firearms and knives as well as other criminal activities and resuming his daily poly-substance abuse if released from prison at this time.

IV.   Conclusion

In sum, Bishop has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 300-month sentence of imprisonment imposed upon Bishop for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to

lessen his sentence or release him from prison at this juncture.  Neither his health, his age, nor the presence of COVID-19 in prison merits a reduction of sentence under these circumstances.

In accordance with the foregoing analysis, Bishop's second *pro se* Request for Appointment of Counsel/Motion for Compassionate Release (##80, 81) is DENIED.

SIGNED at Beaumont, Texas, this 23rd day of March, 2023.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE